SABRINA L. SHADI, Bar No. 205405
VARTAN S. MADOYAN, Bar No. 279015
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859
Emails: sshadi@bakerlaw.com
            vmadoyan@bakerlaw.com

Attorneys for Defendants
SYSCO CORPORATION
and SYSCO SAN FRANCISCO, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY HERNANDEZ, individually and acting on behalf of a class of similarly situated employees,<br><br>Plaintiff,<br><br>vs.<br><br>SYSCO CORPORATION, a Delaware Corporation; SYSCO SAN FRANCISCO, INC., a California Corporation; and DOES 1-50;<br><br>Defendants. | Case No. 3:16-cv-06723-JSC<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>*Before the Honorable Jacqueline S. Corley*<br><br>Hearing Date: December 5, 2019<br>Time: 9:00 a.m.<br>Crtm: F<br><br>[Filed concurrently with Evidentiary Objections; and Declaration of Vartan S. Madoyan] |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# <u>TABLE OF CONTENTS</u>                     Page(s)

I.    INTRODUCTION ...................................................................1

II.   FACTS SUPPORTING DENIAL OF CLASS CERTIFICATION .................3

    A.  PLAINTIFF'S EMPLOYMENT WITH SYSCO SF ...............................3

    B.  SYSCO SF'S RELEVANT POLICIES AND PRACTICES.....................4

        1.   MEAL AND REST BREAK AND TIMEKEEPING POLICIES....................................................................4

        2.   ENCOURAGEMENT OF MEAL/REST BREAKS AND ON-THE-CLOCK WORK ........................................6

        3.   SELECTORS' JOB DUTIES AND EXPECTATIONS....................................................8

        4.   SELECTORS' TESTIMONY ABOUT RELEVANT POLICIES AND PRACTICES ...........................................9

    C.  PLAINTIFF'S ADMISSIONS ABOUT RELEVANT POLICIES AND PRACTICES...................................................11

III.  ANALYSIS...................................................................12

    A.  PLAINTIFF FAILS TO MEET HIS BURDEN UNDER RULE 23 ........12

    B.  PLAINTIFF FAILS TO ESTABLISH COMMONALITY OR PREDOMINANCE .................................................13

        1.   COMMONALITY AND PREDOMINANCE ARE LACKING FOR PLAINTIFF'S MEAL AND REST BREAK CLAIMS.................................................14

        2.   COMMONALITY AND PREDOMINANCE ARE LACKING FOR PLAINTIFF'S OFF-THE-CLOCK CLAIM ...................................................17

        3.   COMMONALITY AND PREDOMINANCE ARE LACKING FOR PLAINTIFF'S DERIVATIVE CLAIMS ...................................................19

    C.  PLAINTIFF PROPOSES DEFECTIVE "FAIL-SAFE" SUBCLASSES ...............................................21

    D.  PLAINTIFF'S CLAIMS ARE NOT TYPICAL OF THE PUTATIVE CLASS CLAIMS ASSERTED, AND HE IS NOT AN ADEQUATE CLASS REPRESENTATIVE ...........................................22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E.   PLAINTIFF OFFERS NO EVIDENCE THAT SYSCO CORPORATION EMPLOYED PLAINTIFF OR OTHER SYSCO SF EMPLOYEES ......................................................................................... 23

IV.   CONCLUSION ................................................................................................ 24

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brinker Rest. Corp. v. Superior Court*,
    53 Cal. 4th 1004 (2012) ...............................................................13, 20

*Brown v. Ticor Title Ins.*,
    982 F.2d 386 (9th Cir. 1992) ...................................................................22

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ....................................................................13

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) ..................................................................22

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)..................................................................................22

*Hanon v. Dataprods. Corp.*,
    976 F.2d 497 (9th Cir. 1992) ....................................................................22

*Henson v. Fidelity Nat'l Financial Inc.*,
    300 F.R.D. 413 (C.D. Cal. 2014)..............................................................12

*Kamar v. RadioShack Corp.*,
    375 Fed. App'x 734 (9th Cir. 2010) .........................................................21

*Maldonado v. Epsilon Plastics, Inc.*,
    22 Cal. App. 5th 1308 (2018) ...................................................................20

*Mazza v. American Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ....................................................................13

*Naranjo v. Spectrum Security Services, Inc*,
    __ Cal.Rtpr.3d __, 2019 WL 4686516 (Sept. 26, 2019) ....................19, 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)............................................................................12, 13

*Zarichny v. Complete Payment Recovery Servs.*,
    80 F. Supp. 3d 610 (E.D. Pa. 2015)..........................................................21

iii

*Zinser v. Accufix Research Inst.*,
  253 F.3d 1180 (9th Cir. 2001) .......................................................12, 14

**Statutes**

California Labor Code Section 203 ...................................................19, 20

California Labor Code Section 226 ...................................................19, 20

**Rules**

Rule 23 of Federal Rules of Civil Procedure .................................1, 12, 22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION;
CASE NO. 3:16-cv-06723-JSC

## I.   INTRODUCTION

Class certification requires affirmative proof that Rule 23's requirements have been met.  In this regard, Plaintiff Henry Hernandez's ("Plaintiff") Motion for Class Certification (the "Motion") fails on many fronts and offers insufficient evidence in support of class certification.

The Motion is premised on a fundamental misunderstanding of the law and misconstruction of relevant facts.  Plaintiff apparently believes that because Sysco San Francisco, Inc. ("Sysco SF") has a standard for measuring warehouse employee productivity and may discipline some employees who consistently underperform, it necessarily follows that employees were not provided meal and rest breaks.  Plaintiff is mistaken.  First, Plaintiff's theory is disconnected from the applicable standard.  California law does not require that employers "police" or ensure that breaks are taken; only that breaks be provided.  Second, Plaintiff's theory is disconnected from the facts.  Sysco SF has maintained compliant meal and rest break and timekeeping policies and practices, disciplines employees who fail to adhere to them, reminds employees to take breaks, schedules breaks, uses a bell system to alert employees of breaks, and announces breaks over intercom, all of which encourage taking breaks.  In fact, Sysco SF goes above and beyond the law by providing rest breaks which last 15 minutes instead of 10 minutes.  If an employee chooses to skip or cut short a break, or perform work off-the-clock, the employee's choice does not result in a legal violation, and such individual choice renders class treatment inappropriate.

Further, Sysco SF's productivity standard for warehouse Selectors, which seems to be the crux of Plaintiff's Motion, is determined by the "average worker's" capabilities, and does not discourage breaks.  As Selectors testified, the productivity standard is not difficult to satisfy while taking meal and rest breaks, and the system automatically accounts for and credits Selectors with their meal and rest break times,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

such that employees do not "get dinged" for taking their breaks and are encouraged to take breaks.

Plaintiff offers no suggestion as to how his claims can be resolved based on common, classwide evidence.  Plaintiff offers no common, classwide evidence that employees complained or made Sysco SF aware if they were skipping breaks.  Nor does Plaintiff offer common, classwide evidence that Sysco SF instructed or suggested that employees should not take meal or rest breaks or that they should work off-the-clock.  The evidence points to the contrary—that Sysco SF took many steps to provide breaks to employees and to record all time worked, and that Selectors did not report any such issues to the company.  At most, Plaintiff offers that some Selectors skipped breaks or performed a minute of off-the-clock work, but many others did not, and in order to determine why a given Selector did or did not do so, individualized inquiries predominate over common ones.  The bare common questions do not have common answers, particularly given all the steps Sysco SF takes to encourage meal and rest breaks.

Plaintiff's admissions highlight the failures of his Motion.  Plaintiff admits he: (1) received the company's policies and handbook; (2) is at fault for not reading the handbook; (3) signed a meal break waiver; (4) had meal and rest breaks scheduled; (5) took his 30-minute meal breaks a majority of the time; (6) was never told not to take breaks; (7) never told anyone if he did not take the breaks provided to him; (8) was aware that Sysco SF's system for measuring productivity is programmed to credit breaks; (9) had management help his productivity by rectifying lost time; (10) would rather not take his breaks and just be there "standing and doing nothing.  It's better to work"; and (11) would only do work, including picking up his equipment, when he was on-the-clock and getting paid.

Accordingly, the Motion fails in light of Sysco SF's compliant policies and practices, encouragement of meal and rest breaks and recording time worked,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff's admissions, and the failure to present common, classwide evidence.  For the reasons detailed below, Defendants respectfully request the Motion be denied.[1]

## II.   FACTS SUPPORTING DENIAL OF CLASS CERTIFICATION

### A.   Plaintiff's Employment with Sysco SF

Sysco SF distributes food and related products to restaurants, health and educational facilities, lodging establishments and other customers in the foodservices industry.  (Declaration of Jay Pangelinan ("Pangelinan Decl.") ¶ 3).[2] Sysco SF employs, among others, warehouse employees such as Selectors, who work varying shifts—day and night shifts.  (*Id.*).  Selectors' general job duties are to "pick cases" by reviewing orders and scanning products as they move them around the warehouse to prepare for customer deliveries.  (Pangelinan Depo. at 27:14-16).

Plaintiff worked as a Selector for Sysco SF for less than one year, from approximately September 2015 to August 2016.  (Plaintiff's Declaration ("Decl.") ¶ 3).  Plaintiff worked only the night shift.  (Plaintiff's Deposition ("Depo.") at 30:16-17); Plaintiff's Decl. ¶ 5).

Plaintiff's employment with Sysco SF was terminated after he refused to show up to work following a suspension for fighting and threatening his co-workers. (Pangelinan Decl. ¶ 4, Exh. 1).  Another Selector who worked with Plaintiff on the night shift recalls that Plaintiff fought with co-workers, that co-workers did not like him, that he was fired after getting into a physical altercation, and that he believes Plaintiff "just has something against Sysco after this fight."  (Declaration of Ikuna Maumalanga ("Maumalanga Decl.") ¶ 4).

---

[1] Plaintiff also presents no evidence that Sysco Corporation employed him or other putative class members (warehouse Selectors).  Therefore, there is no basis for Plaintiff's class claims to proceed against Sysco Corporation.

[2] All declarations, deposition testimony, and exhibits cited in support of Defendants' Opposition to the Motion are filed concurrently as exhibits to the Declaration of Vartan Madoyan.

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION;
CASE NO. 3:16-cv-06723-JSC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**B.**   **Sysco SF's Relevant Policies and Practices**

1.  Meal and Rest Break and Timekeeping Policies

Sysco SF conducts new hire orientations when employees, like Plaintiff, commence employment.   At orientation, Sysco SF provides employees with the employee handbook, meal and rest break policies, optional meal period waiver forms, General House Rules, and other employment-related documents.  (Pangelinan Decl. ¶ 5; Plaintiff's Depo. at 35:20 – 36:11, Exh. 31).  Plaintiff initialed the new hire orientation form confirming he received such documents.  (Plaintiff's Depo. at 35:20 – 38:3, Exh. 31).

The employee handbook during the relevant time, which Plaintiff acknowledged receiving and took home with him,[3] states in part:

- "Sysco San Francisco is committed to keeping accurate records of time and paying employees properly . . . ."  (Section 4.0)

- "Sysco San Francisco uses time records to ensure that employees are paid for all hours worked and in compliance with all applicable federal and state laws.  Non-exempt (hourly) employees are required to use the Company's time clocks to accurately record their starting time, meal periods (out and back in) and end time."  (Section 4.01)

- "Time records are legal documents and must be treated as such.  Falsifying a time record will result in disciplinary action, up to and including termination of employment."  (Section 4.01).

- "The Company provides time and attendance processes/systems for accurately recording time."  (Section 4.02).

- "Rest and meal periods are scheduled by an employee's supervisor to ensure the employee's position and duties are covered if necessary.  Sysco San Francisco will not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than thirty minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the Company and employee."  (Section 4.05).

- "A second meal period of not less than thirty minutes will be provided if an employee works more than ten hours per day, except that if the total hours worked is no more than 12 hours, the second meal period may be

---

[3] (Plaintiff's Depo. at 38:18-21, 40:19-21, 43:20 – 44:12, Exhs, 16 and 32).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

waived by mutual consent of the Company and employee only if the first meal period was not waived." (Section 4.05).

- "Because employees are not on-duty during meal breaks, each employee must clock out at the beginning of his or her meal break and then clock back in at the end of his or her meal break." (Section 4.05).

- "Sysco San Francisco authorizes and permits nonexempt employees to take a rest period that must, insofar as practicable, be taken in the middle of each work period. The rest period is based on the total hours worked daily and must be at the minimum rate of a net ten consecutive minutes for each four hour work period, or major fraction thereof. A rest period is not required for employees whose total daily work time is less than three and one-half hours. The rest period is counted as time worked and therefore, employees are paid for such periods." (Section 4.05).

- "Failure to comply with the Company's meal and rest period rules may lead to disciplinary action, up to discharge." (Section 4.05).

Sysco SF also has a stand-alone meal and rest break policy that further outlines specific meal and rest break timing and other requirements consistent with California law. Plaintiff acknowledged receipt of this policy. (Plaintiff's Depo. at 45:5 – 46:19, Exhs. 35-36).

In addition, Sysco SF provides employees the option to waive meal breaks consistent with California law, which Plaintiff admits was explained to him. Plaintiff executed the waiver and agreed to waive his meal breaks as permitted bey law. (Plaintiff's Depo. 48:13 – 49:18, Exhs. 37-38).

Further, Sysco SF's warehouse Selectors, including Plaintiff, were members of a union after completing a 1,000 hour probationary period of employment. Under the union collective bargaining agreement, Selectors were authorized and permitted to take 15-minute rest breaks rather than 10-minute breaks. (Plaintiff's Depo. at 31:21-23, 54:9-21). They are also provided an additional rest break when working overtime. (Pangelinan Decl. ¶ 6, Exh. 2).

Finally, Sysco SF also maintained General House Rules, which Plaintiff received and acknowledged,[4] regarding discipline for, among other things:

---

[4] (Plaintiff's Depo. at 50:4-21, Exhs. 39-40).

5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- "Dishonesty and/or theft including but not limited to falsification of payroll records." (Section 1-4).

- "Threatening, intimidating or interfering with employees, customers or other persons at any time, including fighting inside the warehouse or on, or while in control of the Employer's property." (Section 1-6).

### 2. Encouragement of Meal/Rest Breaks and On-the-Clock Work

Sysco SF encourages Selectors to take meal and rest breaks in several ways. First, it provides them many documents and information about meal and rest breaks, as detailed above. Second, Sysco SF schedules night-shift Selectors' meal and rest breaks, and posts these schedules at the employee time clocks, lunchroom, and warehouse offices. (Pangelinan Depo. 93:13 – 95:20). The posted schedule provides night-shift Selectors a 15-minute rest break after 2.5 hours of work, a 30-minute meal break after 4.5 hours of work, another 15-minute rest break after 6.5 hours of work, and then another break when they work overtime. (*Id.* at 105:18 – 107:15, Exh. 17; Declaration of Caira Jacobs ("Jacobs Decl.") ¶ 6). Selectors are in a probationary period for the first 1,000 hours of employment, and probationary Selectors are provided different break times set forth on the schedule. (*Id.*) As for day shift selectors, the process is different because their break schedules are not posted, but their meal and rest breaks are every 2 - 2.5 hours. (Jacobs Decl. ¶ 9).

Third, Sysco SF encourages and reminds employees to take breaks via a bell system whereby a loud bell goes off to alert employees to take their meal and rest breaks. (Pangelinan Depo. at 94:16-19, 95:21-24, 117:4 – 118:1). Supervisors also announce over intercom when it is time to take meal and rest breaks. (*Id.* at 119:9-22; Declaration of Austin Jones ("Jones Decl.") ¶ 7). In addition, supervisors and managers periodically remind Selectors of their meal and rest breaks. (Pangelinan Decl. ¶ 8, Jacobs Decl. ¶¶ 10, 13; Jones Decl. ¶¶ 5, 8-9).

Fourth, Selectors are reminded and encouraged to take meal and rest breaks during employee meetings (called Start-Up Meetings) which happen several days

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

per week.  (Pangelinan Depo. at 141:19 – 146:9, Exhs. 19-20).  There are written agendas of topics for these start-up meetings, which include:

- "Associates must take breaks and lunches at scheduled times."  (10/21/13 and 12/8/13 Start-Up Meetings).

- "Associates are required to take a 30 minute lunch."  (10/21/13 and 12/8/13 Start-Up Meetings).

- "People are taking Long Lunches and Long Breaks.  Only making the shift longer."  (2/16/15 Start-Up Meeting).

- "All employee[s] need to follow the schedule break and lunch.  Failure to follow will result to disciplinary action."  (8/25/16, 9/7/16, 9/13/16, and 11/23/16 Start-Up Meetings).

- Reminders of the schedule for meal and rest breaks.  (8/25/16, 9/7/16, 9/13/16, and 11/23/16 Start-Up Meetings).

(*Id.*; *see also* Pangelinan Decl. ¶ 8, Exh. 3; Jones Decl. ¶¶ 4-5)

Fifth, Managers and supervisors do not interrupt meal or rest breaks.  (Jacobs Decl. ¶ 11).  And Sysco SF also encourages employees to take their breaks, and prohibits work off-the-clock, by disciplining employees who do not follow Sysco SF's policies, including discipline for off-the-clock work and write-ups for not adhering to meal and rest break schedules.  (Pangelinan Decl. ¶ 9, Exh. 4; Jacobs Decl. ¶ 14; Jones Decl. ¶ 16).

Finally, Sysco SF provides timekeeping exception forms for employees to complete by-hand if they were unable to or forgot to use the time clock for any reason, to ensure that all hours worked are paid.  (Jacobs Decl. ¶ 21).  Plaintiff, for example, completed almost 50 such forms during his short tenure with Sysco SF, self-reporting that he took timely meal breaks and recording all hours that he worked.  (Plaintiff's Depo. at 70:13 – 71:6, Exh. 41).  Plaintiff's manager noted that Selectors have mis-used exception forms by hiding times when they show up late to work or leave early, and have been disciplined for such reasons.  (Jacobs Decl. ¶ 21).  Plaintiff's manager found it odd and suspicious that Plaintiff had so many exception forms completed in such a short time.  (*Id.* ¶ 22).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    As can be reasonably expected in light of these policies and practices,

2    Selectors (both day shift and night shift) have not suggested or complained of, or

3    reported issues regarding, their meal and rest breaks or off-the-clock work.  (Jacobs

4    Decl. ¶¶ 13, 18; Jones Decl. ¶¶ 8, 14; Pangelinan Decl. ¶ 15).

5           3.  Selectors' Job Duties and Expectations

6    Selectors' job duties are to "pick cases" in a timely manner.  (Pangelinan

7    Depo. at 27:14-16).  Selectors wear devices on their arms (referred to as SWMS

8    devices), which are used to review orders and scan products as they move them

9    around the warehouse to prepare for customer deliveries.  (Pangelinan Decl. ¶ 10).

10   At the beginning of their shifts, Selectors must clock-in to work, and then pick

11   up a pallet jack and their SWMS device.  (*Id.*).  Selectors must clock-out and in for

12   meal breaks, and must also complete all work, including putting away their work

13   equipment, before they clock-out and go home.  (*Id.*).  Sysco SF allots 12 minutes

14   for night shift Selectors (and 7 minutes for day shift) to complete preparatory work,

15   and 5 minutes to put away their equipment at the end of the day, which is on-the-

16   clock and paid time.  (*Id.; see also* Pangelinan Depo. 108:19 – 109:5, 112:12-14;

17   Jacobs Decl. ¶ 20).

18   Sysco SF utilizes a system engineered based on labor standards which

19   determines a goal time for each batch of orders that Selectors pick.  (Pangelinan

20   Decl.. ¶¶ 11-14; Jacobs Decl. ¶¶ 15-18; Jones Decl. ¶¶ 10-15).  The goal time is set

21   based on how long it would take the average worker to complete the given order.

22   (*Id.*).  In addition, meal and rest breaks are automatically programed into the system,

23   and the system automatically credits employees with that time as it relates to their

24   goal time.  (*Id.*; *see also* Plaintiff's Depo. at 77:23 – 78:4, 80:23 – 81:3).  This

25   encourages employees to take their breaks without fear of negatively impacting their

26   job performance or job expectations.  (Pangelinan Decl.. ¶¶ 11-14; Jacobs Decl.

27   ¶¶ 15-18; Jones Decl. ¶¶ 10-15).

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

8

If Selectors perform at the average level, they are deemed to be 100% efficient.  (*Id.*)  Sysco SF's expectation is that Selectors perform at this average level on a weekly basis.  (*Id.*)  However, there is no such expectation for Probationary Selectors.  Probationary Selectors are not provided a percentage until after about 4 weeks into the job, at which point they are expected to be performing at a 50% level, and that goes up by 5% every week.  (*Id.*)  If Selectors are below average for a given week, supervisors coach and assist them to improve their performance levels.  (*Id.*).  Selectors are not disciplined or provided written warnings unless they consistently perform below average over time.  (*Id.*).  If Selectors perform above the average level, their efficiency can exceed 100% and they are provided additional pay if they perform above average in a given week.  (*Id.*).

Similar to meal and rest breaks, Selectors also have other time for which they are automatically credited with respect to the 100% average.  For example, the 12 minutes allotted for night shift Selectors (and 7 minutes for day shift) to complete preparatory work, and 5 minutes to put away their equipment at the end of the day, is credited to the 100% expectation.  (Pangelinan Depo. 108:19 – 109:5, 112:12-14; Pangelinan Decl. ¶ 10; Jacobs Decl. ¶ 20; Jones Decl. ¶ 16).  Similarly, Selectors can enter a code for "Indirect" time for anything related to delays, downtime, trainings, meetings, clean-up, or other work unrelated to fulfilling orders.  (Pangelinan Decl. ¶ 12; Jacobs Decl. ¶ 17; Jones Decl. ¶ 12).

An analysis of a random sampling of Selectors' SWMS scanning times over a dozen different days in 2016, 2017, and 2018 shows that almost 94% of Selectors had at least 2 gaps between scans lasting 10 minutes or more during their workday, 86% had at least 3 such gaps, and 77% had at least 4 such gaps.  (Declaration of Kris Hoffman ¶ 5).

### 4. Selectors' Testimony About Relevant Policies and Practices

Selectors' testimony supports Sysco SF's compliant meal and rest break and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

9

timekeeping policies and practices, and encouragement to follow such policies and practices.

For example, Selectors testified that[5]:

- They take their scheduled meal and/or rest breaks, including second meal breaks if they work over 10 hours.  (Castellano Decl. ¶ 5; Keo Decl. ¶¶ 4-6; Fajardo Decl. ¶ 3; Loya Decl. ¶¶ 3-4; Maumalanga Decl. ¶¶ 2, 5; Ramirez Decl. ¶ 5; Titus Decl. ¶¶ 3-5; Woods Decl. ¶¶ 4-6).

- Some take even longer breaks than they are supposed to.  (Castellano ¶ 5).

- If they ever did not take a meal and/or rest break, it was because they choose on their own not to do so.  (Fajardo Decl. ¶ 5; Keo Decl. ¶ 4; Ramirez Decl. ¶¶ 6-7).

- They are reminded to take meal and rest breaks by their managers, through schedules, the bell system, and/or announcements by supervisors over the intercom.  (Castellano Decl. ¶¶ 4, 6; Fajardo Decl. ¶¶ 3, 5; Keo Decl. ¶¶ 3-5; Loya Decl. ¶¶ 3, 4, 7; Maumalanga Decl. ¶ 8; Ramirez Decl. ¶ 3; Titus Decl. ¶¶ 3, 5; Woods Decl. ¶ 3).

- They have not been interrupted during meal and rest breaks. (Castellano Decl. ¶ 7; Fajardo Decl. ¶¶ 4, 6; Keo Decl. ¶ 6; Maumalanga Decl. ¶ 7; Woods Decl. ¶ 4).

- No one has ever told them or suggested that they should skip or cut short a meal or rest break, or perform work off the clock.  (Castellano Decl. ¶¶ 7, 9; Keo Decl. ¶ 7; Loya Decl. ¶ 7; Ramirez Decl. ¶ 10; Titus Decl. ¶¶ 6, 9; Woods Decl. ¶ 7).

- The 100% average standard is easy to satisfy – and in many cases surpass – while still taking all meal and rest breaks.  (Castellano Decl. ¶ 8; Loya Decl. ¶ 4-5; Maumalanga Decl. ¶¶ 5-6; Ramirez Decl. ¶¶ 8-9; Titus Decl. ¶ 7;

- They have not performed any work before clocking in or after clocking out for the day.  (Keo Decl. ¶ 7; Titus Decl. ¶ 8; Woods Decl. ¶ 7).

- They clock in before picking up their pallet jack and other work equipment, which only takes a couple of minutes.  (Loya Decl. ¶ 6; Maumalanga Decl. ¶ 9; Titus Decl. ¶ 8).

- They have reviewed their paychecks, and their pay and hours have always appeared accurate.  (Keo Decl. ¶ 8; Maumalanga Decl. ¶ 10; Woods Decl. ¶ 8).

---

[5] Each declaration referred to here is filed concurrently with Defendants' Opposition.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- They recall working with Plaintiff and that he fought with co-workers, people did not like him, he was fired after getting into a physical altercation, and they believe he "just has something against Sysco after this fight." (Maumalanga Decl. ¶ 4).

Further, a night shift supervisor who did Selecting work for 3 days to be able to "stand in the shoes" of a Selector, also said that the 100% average standard is easy to satisfy (and well-surpass) while still taking all breaks. (Jones Decl. ¶ 13).

## C.   Plaintiff's Admissions about Relevant Policies and Practices

Plaintiff makes several admissions that cut against his own claims. Plaintiff admits that he would punch-in first when getting to work and be on-the-clock before getting his work equipment. (Plaintiff's Depo. at 73:24 – 74:19). Plaintiff also admits that although he received the company's handbook, took the handbook home, and acknowledged he was expected to read it and familiarize himself with the material, he did not actually read the handbook. (Plaintiff's Depo. at 38:18-21. 39:12-16, Exh. 32). Plaintiff admits he is at fault for not reading it. (*Id*. at 41:18 – 42:2).

Further, Plaintiff admits that he had a meal and rest break schedule which he was required to follow, and that he took his 30-minute meal breaks "the majority of the time." (*Id*. at 77:2-12, 88:12-24). Plaintiff admits that nobody ever told him he should skip or work during breaks, and that he never told anyone that he worked during some breaks. (*Id.* at 57:22-24, 61:8-10, 91:21-22). Instead, Plaintiff stated that he would rather work than take a break "just being there, standing, and doing nothing. It's better to work." (*Id*. at 92:12-19.)

Plaintiff admits that he never complained to management or Human Resources (HR) that he felt the goal time for a given order was not sufficient. (*Id.* at 66:15-19). In fact, Plaintiff was aware that Sysco SF's productivity system accounts for breaks, and he had management positively adjust his productivity at times by

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

11

rectifying time he lost due to issues with labels or dropping pallets of food on the floor.  (*Id.* at 77:23 – 78:4, 80:23 – 81:3, 81:24 – 82:13).

Plaintiff's declaration (filed with Plaintiff's Motion) contradicts some additional admissions he made at his deposition.  Plaintiff's declaration states that he would keep his scanning device on during his meal breaks, and that he never received a second meal break.  (Plaintiff's Decl. ¶¶ 12-13).  Yet, at his deposition, Plaintiff admitted that he "would take off" his scanning equipment during his meal breaks, and admitted he sometimes took the second meal breaks that were provided to him.  (Plaintiff's Depo. at 77:19-22, 96:3-8).

Finally, Plaintiff (who only worked the night shift) admits that he does not know how Selectors on the day shift spent their day or what they did at work.  (*Id.* at 61:25 – 62:2).

## III.   ANALYSIS

### A.   <u>Plaintiff Fails to Meet His Burden Under Rule 23</u>

Plaintiff bears a heavy burden to prove that each and every element of Rule 23 is established.  *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

The burden imposed upon Plaintiff by *Dukes* is substantial and cannot be met by simply producing some evidence to support certification; Plaintiff's evidence must be "persuasive."  *Henson v. Fidelity Nat'l Financial Inc.*, 300 F.R.D. 413, 417 (C.D. Cal. 2014).  Contrary to Plaintiff's assertion (based generally on decisions from courts outside California), that class certification is liberally granted and that courts assume the substantive allegations are true, the Ninth Circuit has held that the Court has a "duty to conduct a 'rigorous analysis'" and is "charged with 'judging the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   persuasiveness of the evidence presented.'" *Ellis v. Costco Wholesale Corp.*, 657

2   F.3d 970, 982 (9th Cir. 2011)).  As detailed below, Plaintiff fails to meet his heavy

3   burdens under Rule 23.

### B.   Plaintiff Fails to Establish Commonality or Predominance

5       The California Supreme Court detailed, in *Brinker*, that employers do not

6   need to police meal and rest breaks to ensure that employees take their breaks.

7   *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040-41 (2012).

8   Employers must simply *provide* employees with a meal break and *authorize* them to

9   take rest breaks.  However, as Plaintiff would have it, simply asking whether

10   employees "received proper rest breaks" or "received proper meal periods" is

11   sufficient to establish commonality and predominance.  (Motion at 11:11-17.)  It is

12   not enough for Plaintiff simply to ask such questions.  Plaintiff must establish, with

13   persuasive evidence, that the questions he poses can "generate common answers"

14   that are "apt to drive the resolution of the litigation," such that common answers

15   predominate over individualized issues.  *Mazza v. American Honda Motor Co., Inc*.,

16   666 F.3d 581, 588-89 (9th Cir. 2012), quoting *Wal-Mart Stores, Inc. v. Dukes*, 564

17   U.S. 338, 350 (2011).  Commonality requires that claims must depend upon a

18   "common contention such that determination of its truth or falsity will resolve an

19   issue that is central to the validity of each [claim] in one stroke."  *Id.* (internal

20   quotations omitted).

21       Here, commonality and predominance are lacking.  Given Sysco SF's

22   compliant policies and practices detailed above, an employee who elects to skip a

23   break, cut a break short, or work off-the-clock – whether to increase their

24   productivity or for some other reason – does so as a matter of personal choice.  This

25   exercise of personal choice does not result in a legal violation, and necessarily

26   demands that individualized issues, rather than common, classwide issues,

27   predominate.  When individual issues predominate, as is the case here, the Ninth

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Circuit holds that "the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001)).

### 1. Commonality and Predominance are Lacking for Plaintiff's Meal and Rest Break Claims

The evidence shows that Plaintiff's theories of liability are just that—theories which are disconnected from the facts and from the applicable legal standards. Plaintiff presents no common method of proof to show a uniform policy or companywide practice to not provide Selectors meal or rest breaks, nor can Plaintiff do so. The evidence shows that Sysco SF's policies were compliant, and that it took several measures to ensure that its practices were consistent with those compliant policies. Sysco SF had systems in place to ensure that compliant meal and rest breaks were provided, including scheduling such breaks and engineering its productivity system to account for time for meal and rest breaks. (Pangelinan Depo. at 93:13 – 95:20, 105:18 – 107:15, Exh. 17; Plaintiff's Depo. at 77:23 – 78:4, 80:23 – 81:3; Pangelinan Decl. ¶¶ 11-14; Jacobs Decl. ¶¶ 15-18; Jones Decl. ¶¶ 10-15).

In addition, Sysco SF goes above and beyond, by providing 15-minute rather than 10-minute rest breaks, and by alerting employees either through a loud bell system or over intercom to take their meal and rest breaks. Sysco SF also reminds employees to take their breaks during Start-Up meetings and other periodic reminders from managers or supervisors throughout the week. Finally, as detailed above, Sysco SF disciplines and writes-up employees who fail to adhere to its compliant policies and practices.

Plaintiff's Motion is largely premised on the notion that Sysco SF's productivity system discouraged breaks because employees' time would be idle and lower their productivity. However, this theory is not supported by the evidence, and does not generate common answers. The goal time for a given order within Sysco

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION;
CASE NO. 3:16-cv-06723-JSC

SF's systems is set based on how long it would take the average worker to complete it.  (Pangelinan Decl. ¶¶ 11-14; Jacobs Decl. ¶¶ 15-18; Jones Decl. ¶¶ 10-15).  A 100% efficiency standard is not unrealistic; if Selectors perform at the average level, they are deemed to be 100% efficient.  (*Id.*).  In addition, meal and rest breaks are programed in the system such that the goal time accounts for employees taking all of their meal and rest breaks.  (*Id.*).  Plaintiff himself was aware that Sysco SF's productivity system accounts for breaks and has had management boost his productivity by rectifying lost time (for issues unrelated to breaks).  (Plaintiff's Depo. at 77:23 – 78:4, 80:23 – 81:3, 81:24 – 82:13).[6]  Many Selectors found it easy to meet these standards and still take their meal and rest breaks.  (Castellano Decl. ¶ 8; Loya Decl. ¶ 4-5; Maumalanga Decl. ¶¶ 5-6; Ramirez Decl. ¶¶ 8-9; Titus Decl. ¶ 7).  Others sometimes skipped breaks and testified it was their own voluntarily choice and/or admitted that no one ever encouraged them to skip breaks.  (Castellano Decl. ¶ 7; Fajardo Decl. ¶¶ 4-6; Keo Decl. ¶¶ 4, 7; Loya Decl. ¶ 7; Ramirez Decl. ¶¶ 6-7, 10; Titus Decl. ¶¶ 6, 9; Woods Decl. ¶ 7).

Sysco SF took many measures to encourage Selectors to take their breaks and ensure that breaks do not negatively impact job performance or job expectations. Plaintiff's own testimony proves that classwide commonality and predominance are lacking, and that individual choices regarding taking breaks predominate.  Plaintiff testified that he took "a majority" of his first meal breaks and some second meal breaks.  (Plaintiff's Depo at 96:3-8).  Further, Plaintiff admits that he never told anyone that he would work during some of his breaks.  (*Id.* at 57:22-24, 61:8-10, 91:21-22).  Plaintiff also testified that he was never told to skip breaks or perform work during breaks.  (*Id.*)  Instead, Plaintiff testified that he would rather work than

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[6] In addition, Plaintiff admits he never complained to management or Human Resources that he felt the goal time for a given order was not sufficient.  (*Id.* at 66:15-19).

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION;
CASE NO. 3:16-cv-06723-JSC

take a break "just being there, standing, and doing nothing.  It's better to work."  (*Id.* at 92:12-19.)

Rather than establishing, with persuasive evidence, that common, classwide issues exist and predominate, Selectors' testimony and Plaintiff's own testimony regarding his personal preferences establish that individual choices predominate, rendering class treatment impossible.  If an employee chooses to skip or cut short a break, whether to increase their productivity or for some other reason, the employee's choice does not result in a legal violation, and such employee choice necessitates that individualized issues, rather than common classwide issues, predominate over the case.  An analysis of a random sampling of Selectors' SWMS scanning times over a dozen different days in 2016, 2017, and 2018 shows that nearly all of them had the ability to take rest breaks.  Almost 94% of Selectors had at least 2 gaps between scans lasting 10 minutes or more during their workday, 86% had at least 3 such gaps, and 77% had at least 4 such gaps.  (Declaration of Kris Hoffman ¶ 5).

Moreover, the putative class member declarations submitted by Plaintiff are defective,[7] boilerplate, and demonstrate the following:

- Some of Plaintiff's declarants testified that they were required to take meal breaks and did take all of their meal breaks; others do not raise any issues related to their meal breaks.  (Declarations of Eladio Lagunes, Enrique Sanchez).

- One of Plaintiff's declarants does not raise any issues related to his rest breaks.  (Declaration of Armando Tejero).

- A majority of Plaintiff's declarants fail to say that they informed any manager, supervisor, or HR if they did not take a meal break, and/or do not say that they were ever instructed not to take a meal break.  (Declarations of Jaime Campos, Adrian Coye, Abe Hodnett, Michael Johnson, Eladio

---

[7] Defendants submit, concurrently with their Opposition to the Motion, evidentiary objections to the declarations submitted by Plaintiff.

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION;
CASE NO. 3:16-cv-06723-JSC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Lagunes, Aaron Lanzarin, Julio Ramos, Nicholas Salaam, Enrique Sanchez, Armando Tejero).

- A majority of Plaintiff's declarants fail to say that they told any manager, supervisor, or HR if they did not take a rest break, and/or do not say that they were ever instructed not to take a rest break.  (Declarations of Jaime Campos, Adrian Coye, Abe Hodnett, Michael Johnson, Eladio Lagunes, Aaron Lanzarin, Julio Ramos, Nicholas Salaam, Enrique Sanchez, Armando Tejero).

Plaintiff cherry-picks boilerplate declarations all from Selectors who quit or whose jobs were terminated,[8] and thus as a natural tendency may have negative feelings against Sysco SF, but these declarations still reinforce the lack of common and predominate classwide evidence.

Finally, since Plaintiff worked exclusively on the night-shift, as did all other Selectors for whom he submitted declarations, Plaintiff has no evidence to support commonality related to day-shift Selectors.  Commonality is lacking with respect to Probationary Selectors as well, who are not even subject to the 100% average worker standard that is the focus of Plaintiff's Motion.  (Pangelinan Decl.. ¶¶ 11-14; Jacobs Decl. ¶¶ 16).

For all of these reasons, commonality and predominance are lacking for Plaintiff's meal and rest break claims.

    2.  <u>Commonality and Predominance are Lacking for Plaintiff's Off-the-Clock Claim</u>

Classwide commonality and predominance are also lacking for Plaintiff's off-the-clock claim.  Plaintiff presents no common method of proof to show a uniform policy or companywide practice to permit Selectors to work-off-the-clock,   nor can Plaintiff do so.  The evidence shows that Sysco SF's timekeeping policies are compliant and subject Selectors to discipline for failure to record all time worked. Sysco SF took several measures to ensure that its practices were consistent with its

---

[8] The former employee status of Plaintiff's declarants is evident from the face of the declarations.

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION; CASE NO. 3:16-cv-06723-JSC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

compliant policies.  For example, SF does discipline employees if it finds that they worked off-the-clock.  (Pangelinan Decl. ¶ 9, Exh. 4).  Sysco SF also provides timekeeping exception forms for employees to complete by hand if they were unable to or forgot to use the time clock for any reason, to ensure that all hours worked are paid.  Plaintiff, for example, completed almost 50 such forms during his short tenure with Sysco SF, self-reporting that he is recording all hours that he worked in order to be paid (and self-reporting his meal break times).  (Plaintiff's Depo. at 70:13 – 71:6, Exh. 41).[9]

Further, at the beginning of their shifts, Selectors must clock-in to work, and then pick up a pallet jack and their SWMS device, as detailed above.  Selectors must clock-out and in for meal breaks, and must also complete all work, including putting away their work equipment, before they clock-out and go home.  Sysco SF allots 12 minutes for Selectors to complete preparatory work, and 5 minutes to put away their equipment at the end of the day, which is on-the-clock and paid time.  (Pangelinan Depo. 108:19 – 109:5, 112:12-14).

Plaintiff's own admissions highlight the lack of commonality and why individualized issues predominate as to his off-the-clock claim.  Plaintiff, for example, admits that he would punch-in first when getting to work and be on-the-clock before getting his work equipment.  (Plaintiff's Depo. at 73:24 – 74:19).  Thus, although Plaintiff's Motion argues that Selectors perform such work-related tasks prior to clocking-in, Plaintiff's own testimony demonstrates that he did not engage in conduct that would support such a claim, let alone have the ability to represent other Selectors through common, classwide proof.

---

[9] Plaintiff's manager noted that Selectors have mis-used exception forms by hiding times when they show up late to work or leave early, and have been disciplined for such reasons.  (Jacobs Decl. ¶ 21).  Plaintiff's manager found it odd and suspicious that Plaintiff had so many exception forms completed in such a short time.  (*Id.* ¶ 22).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Further, other putative class members testified that they record all the time they work and/or are provided sufficient time to grab and put-away their equipment at the beginning and end of their shifts, while they are on-the-clock. (Keo Decl. ¶ 7; Loya Decl. ¶ 6; Maumalanga Decl. ¶ 9; Titus Decl. ¶ 8; Woods Decl. ¶ 7). Others also testified that no one ever instructed them or permitted them to work off-the-clock or through breaks. (Castellano Decl. ¶¶ 7, 9; Keo Decl. ¶ 7; Loya Decl. ¶ 7; Ramirez Decl. ¶ 10; Titus Decl. ¶¶ 6, 9; Woods Decl. ¶ 7).

There is no evidence of any common answers to supposedly common questions posed by Plaintiff. Rather, individualized inquiries would predominate as the Court attempts to determine whether a Selector worked off the clock because it was required or not. For all of these reasons, commonality and predominance are lacking for Plaintiff's off-the-clock claims.

### 3. Commonality and Predominance are Lacking for Plaintiff's Derivative Claims

Plaintiff seeks to certify what he refers to as derivative claims for failure to timely pay final wages under California Labor Code Section 203 and for failure to provide accurate wage statements under California Labor Code Section 226. Since these claims are derivative, they lack commonality and predominance for the same reasons established above.

Plaintiff also lacks common, classwide proof for his Section 203 and Section 226 claims because Plaintiff's theories fail as a matter of law. As California Courts of Appeal have made clear on multiple, recent occasions, (1) claims for Section 203 and Section 226 penalties cannot be premised on a claim for failure to provide meal or rest breaks; and (2) wage statements are accurate and compliant if they itemize what employees were actually paid (even if employees claim they have unpaid wages and should have been paid more). *Naranjo v. Spectrum Security Services,*

Baker & Hostetler llp
Attorneys at Law
Los Angeles

19

*Inc*, __ Cal.Rtpr.3d __, 2019 WL 4686516 (Sept. 26, 2019); *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018).

In *Naranjo*, an hourly employee brought a putative class action alleging meal and rest break violations, and derivative waiting time penalty and wage statement claims. The trial court granted class certification (prior to the *Brinker* decision) on the plaintiff's meal break claim and denied certification on the plaintiff's rest break claim. *Naranjo*, __ Cal.Rtpr.3d __, 2019 WL 4686516 at *2. On appeal following trial, the Court of Appeal held that meal and rest break claims "do not entitle employees to pursue derivative penalties in Sections 203 and 226." *Id.* at *16.

Similarly, in *Maldonado*, the Court of Appeal held that derivative wage statement claims cannot stand. In *Maldonado*, the plaintiffs argued that they were owed additional wages that were not reflected on their wage statements. *Maldonado*, 22 Cal. App. 5th at 1335-36. The Court of Appeal, however, recognized that the commonsense position is that wage statements need only reflect the actual pay that employees received. *Id.* Otherwise, "if plaintiffs' argument were followed to its logical conclusion, the only way [the employer] could have avoided wage statement penalties . . . would have been to issue a wage statement which bore no similarity to the pay the employees were actually receiving." *Id.* Therefore, the Court of Appeal dismissed the derivative wage statement claim.

The same reasoning as in the *Naranjo* and *Maldonado* cases applies with equal force in this case. Plaintiff cannot establish common, classwide proof of derivative Section 203 and Section 226 violations since his theories do not result in violations.

For all of these reasons, commonality and predominance are lacking for Plaintiff's derivative Section 203 and Section 226 claims.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### C. **Plaintiff Proposes Defective "Fail-Safe" Subclasses**

Each of Plaintiff's proposed subclasses is a defective "fail-safe" subclass because no employee can be a member of a subclass unless liability is established, thus rendering the subclasses unascertainable and unmanageable. (Plaintiff's Motion at 5:8-16). A fail-safe subclass is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim," and thus the existence of the claim "cannot be ascertained until the conclusion of the case, when liability is determined." *Zarichny v. Complete Payment Recovery Servs.*, 80 F. Supp. 3d 610, 623 (E.D. Pa. 2015). The "obvious problems" inherent to a "fail-safe" subclass is that the "class itself is defined in a way that precludes membership unless the liability of the defendant is established. When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class. That is palpably unfair to the defendant, and is also unmanageable—for example, to whom should the class notice be sent?" *Kamar v. RadioShack Corp.*, 375 Fed. App'x 734, 736 (9th Cir. 2010).

The "fail-safe" subclass defect is found within each of Plaintiff's sub-classes. Plaintiff defines the meal break subclass to include only those employees who "were not paid all lawful wages, including meal period wages." Similarly, Plaintiff defines the rest break subclass to include only those employees who "were not paid all lawful wages, including rest period wages." Finally, Plaintiff defines the unpaid minimum wage subclass to include only those employees who "were not paid all minimum wages." (Plaintiff's Motion at 5:8-16).

As noted above, Plaintiff's fail-safe subclasses are palpably unfair, unascertainable, and unmanageable. For this reason, Plaintiff's motion to certify them should be denied.

### D.   Plaintiff's Claims Are Not Typical of the Putative Class Claims Asserted, And He is Not An Adequate Class Representative

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality refers to the nature of the claim . . . of the class representative and not on facts surrounding the clair or defense." *Hanon v. Dataprods. Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotations and citation omitted). The typicality requirement ensures that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

Rule 23(a)(4) imposes a requirement that the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The court must ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the actions vigorously on behalf of the class?" *Evon*, 688 F.3d at 1031 (internal quotations omitted).  Moreover, adequacy requires an "absence of antagonism" and sharing of interests between Plaintiff and the putative class, among other things. *Brown v. Ticor Title Ins*., 982 F.2d 386, 390 (9th Cir. 1992).

Here, Plaintiff's admissions demonstrate that he is not an adequate class representative and cannot establish typicality.  As detailed above, Plaintiff admits that he did not read the employee handbook (and other documents) and is at fault for not doing so.  Plaintiff also testified that he would rather work than take a break "just being there, standing, and doing nothing.  It's better to work."  (Plaintiff's

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Depo. at 92:12-19).  Yet Plaintiff challenges these policies and practices, despite his admissions.  In addition, Plaintiff's declaration contradicts testimony he made at his deposition.  Plaintiff's declaration states that he would keep his scanning device on during his meal breaks, and that he never received a second meal break.  (Plaintiff's Decl. ¶¶ 12-13).  At his deposition, however, Plaintiff admitted that he "would take off" his scanning equipment during his meal breaks and sometimes took the second meal breaks provided to him.  (Plaintiff's Depo. at 77:19-22, 96:3-8).

Further, Plaintiff has exhibited antagonistic conduct against other putative class members, demonstrating he is not an adequate representative.  Plaintiff's employment with Sysco SF was terminated after he refused to show up to work following a suspension for fighting and threatening other Selectors.  (Pangelinan Decl. ¶ 4, Exh. 1).  As one co-worker of Plaintiff put it, Plaintiff fought with his co-workers, his co-workers did not like him, and he believes Plaintiff "just has something against Sysco after this fight."  (Maumalanga Decl. ¶ 4).

Finally, as detailed above, Plaintiff (and other putative class members for whom Plaintiff submitted declarations) worked exclusively on the night-shift, and thus, cannot represent and does not provide evidence related to day-shift Selectors.

For these reasons, the Motion fails due to lack of adequacy and typicality.

### E.   Plaintiff Offers No Evidence that Sysco Corporation Employed Plaintiff or Other Sysco SF Employees

Finally, Plaintiff's Motion offers no arguments or evidence that Sysco Corporation employed (or jointly employed) Plaintiff or other putative class members (Selectors employed by Sysco SF).  Accordingly, the Motion should be denied as to Sysco Corporation for this independent reason.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## IV.   CONCLUSION

For all of the reasons detailed above, Plaintiff's Motion lacks merit, and Sysco SF and Sysco Corporation respectfully request that the Motion be denied.

Respectfully submitted,

Dated:  October 18, 2019          **BAKER & HOSTETLER LLP**

By:   */s/ Vartan S. Madoyan*
      VARTAN S. MADOYAN
      SABRINA L. SHADI

*Attorneys for Defendants*

4813-1085-4823

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION;
CASE NO. 3:16-cv-06723-JSC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES