UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>SYSCO CORPORATION, et al.,<br><br>Defendants. | Case No. 16-cv-06723-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 103 |

Plaintiff Henry Hernandez brings state law wage and hour claims against his former employer Sysco Corporation and Sysco San Francisco (collectively "Sysco") on behalf of himself and a putative class. Plaintiff insists that Defendants failed to provide rest and meal breaks, failed to pay minimum wages for all hours worked, and failed to comply with requirements to provide accurate itemized wage statements and final pay. Plaintiff's motion for class certification under Federal Rule of Civil Procedure 23(b)(3) is now pending before the Court.[1] (Dkt. No. 103.) Having considered the parties' briefs and their supplemental submissions, and having had the benefit of oral argument on December 5, 2019, the Court GRANTS IN PART AND DENIES IN PART the motion for class certification. The Court denies the motion as to Plaintiff's meal and rest break claims as individualized issues predominate those claims. The Court grants certification of a narrowed off-the-clock claim for individuals who worked during their unpaid meal breaks as well as the derivative failure to pay wages at the end of employment and failure to provide

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8, 17.)

1 accurate paystubs claims.

## BACKGROUND

### A. Factual Background

Sysco San Francisco ("Sysco SF") distributes food and related products to restaurants, health and educational facilities, lodging establishments and other customers in the foodservices industry from its warehouse in Fremont. (Dkt. No. 107-2, Pangelinan Decl. at ¶ 3.) Sysco SF employs individuals known as Selectors to work the day and night shifts at its warehouse. (*Id.*) There are about 86 individuals currently employed as Selectors at Sysco SF. (Dkt. No. 104-3, Pangelinan Depo. at 120:7-10.)

Selectors are required to wear devices on their arms (known as SWMS devices) that are used to review orders and scan products as they move them around the warehouse to prepare for customer deliveries. (Dkt. No. 107-2 at ¶ 10.) At the start of each shift, Selectors must clock-in to work, and then pick up a pallet jack and their SWMS device. (*Id.*) They must complete all their work, including putting away work equipment, before they clock-out and go home. (*Id.*) Employees have 12 minutes at the start of the shift and 5 minutes at the end of their shift to complete these tasks. (*Id.*) Selectors are also required to clock-in and clock-out in for meal breaks. (*Id.*)

Sysco SF utilizes a productivity system which sets goal times for employees to complete their tasks. (*Id.* at ¶ 11.) "The goal time is set based on how long it would take the average worker to complete the given order." (*Id.*) When an employee receives an order on the SWMS device it includes a goal time. (Dkt. No. 104-3 at 98:9-12.) A sample order would be "like, a Cheesecake Factory order. It's going to be 60 minutes' long. It tells them how many pallets to grab, either one, two, or three. How many cases to select. It could be anywhere between 10 to 200 to 300 cases per order. How many splitable items. It tells them what door to put it at when they're done selecting it, and it tells them a goal time that they would have to make." (*Id.* at 98:15-22.)

"Meal and rest breaks are programmed in the system so that the goal time automatically accounts for employees taking all of their meal and rest breaks." (Dkt. No. 107-2 at ¶ 11.)

According to Sysco, "[i]f Selectors perform at the average level, then they are 100% efficient in terms of job performance." (*Id.* at ¶ 12.) Sysco expects that all employees will be able to "perform at this average level on a weekly basis." (*Id.*) If they are below that level at the end of the week, there is "coaching, retraining, observations." (Dkt. No. 104-3 at 132:6-14.) Selectors are provided written warnings and disciplined if they consistently perform below average. (Dkt. No. 107-2 at ¶ 12.) If Selectors perform above average for a given week, then they receive additional pay. (*Id.*) Probationary employees (employees who have worked four weeks or less) are only expected to be 50 percent efficient. (*Id.* at ¶ 13.)

Henry Hernandez worked as a Selector on the night shift from September 2015 to August 2016. (Dkt. No. 104-40, Hernandez Decl. at ¶¶ 3, 5.) As a Selector, he would select and move boxes of food product weighing anywhere from 80-110 pounds. (Dkt. No. 104-40 at ¶ 7.) After he selected and scanned his boxes, he would load them onto a pallet jack that he drove around the warehouse to a wrapping station which would prepare the packages for loading onto delivery trucks. (*Id.* at ¶ 7.) He was expected to maintain a 100% or greater productivity rate as a warehouse employee. (*Id.* at ¶ 7.) Information about his productivity was maintained by the scanner that he used to scan boxes (his SWMS device). (*Id.* at ¶ 8.) Each order had a "goal time" within which he had to complete a specific order. He understood that he would be disciplined if he fell below the goal time. (*Id.*) "Throughout most of [his] employment with Sysco, [he] was not provided with the opportunity to take a rest break." (*Id.* at ¶ 9.) In fact, he was "discouraged" from taking one. (*Id.* at ¶ 9.) Mr. Hernandez was never told that he could take a second break and he never took one. (*Id.* at ¶¶ 20, 13.) He only took short meal breaks and left his gear on while doing so. (*Id.* at ¶ 12.) His SWMS selector data indicates that for 73.5 percent of his shifts (64 out of 87 shifts) his meal break was interrupted by work activity. (Dkt. No. 118-3 at ¶ 6.) Mr. Hernandez was terminated in 2016. (Dkt. No. 107-2 at ¶ 4.)

**B. Procedural Background**

A month after he left his employment with Sysco, Plaintiff filed this putative class action complaint in Alameda Superior Court. (Dkt. No. 1-1.) He pled seven claims for relief under state law: (1) failure to provide rest periods in violation of California Labor Code § 226.7 and Wage

3

1  Order 7; (2) failure to provide meal periods in violation of California Labor Code §§ 226.7, 512, and Wage Order 7; (3) failure to pay overtime in violation of California Labor Code §§ 510, 1194, 1194.2, and Wage Order No. 7; (4) failure to pay minimum wage in violation of California Labor Code §§ 1197, 1194(a), 1194.2; (5) failure to pay wages at termination in violation of California Labor Code §§ 201, 202, 203; (6) failure to issue accurate and itemized wage statements in violation of California Labor Code §§ 226(b), 1174, 1175, and Wage Order No. 7); and (7) violation of unfair competition law in violation of California Business and Professions Code § 17200 et seq. (*Id.*) Defendants filed their answer in state court on November 21, 2016 and simultaneously removed the complaint to federal court under the Class Action Fairness Act ("CAFA"). (Dkt. Nos. 1; 1-2.)

Plaintiff thereafter filed a motion for remand which the Court denied. (Dkt. No. 20.) Sysco then filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which the Court granted as to Plaintiff's overtime claim, but otherwise denied. (Dkt. No. 41.) After multiple extensions of time to conduct discovery, Plaintiff filed the now pending motion for class certification. (Dkt. Nos. 99, 103.)

## EVIDENTIARY OBJECTIONS

Sysco filed separate evidentiary objections. (Dkt. No. 106.) This separate filing violates Civil Local Rule 7-3(c), which requires "[a]ny evidentiary and procedural objections to the motion must be contained within the [opposition] brief or memorandum." Civ. L.R. 7- 3(a). "Courts in this district regularly strike separately-filed evidentiary objections and responses for violating Local Rule 7-3." *Go Daddy Operating Co., LLC v. Ghaznavi*, No. 17-CV-06545-PJH, 2018 WL 1091257, at *14 (N.D. Cal. Feb. 28, 2018) (collecting cases re: same). The Court thus STRIKES Sysco's separate statement of evidentiary objections and shall only consider those objections raised in the context of Sysco's opposition brief.

Plaintiff's reply brief includes objections to the Declaration of Kris Hoffman who works for Sysco Corporation in Texas as a Functional Analyst in the Supply Chair Business Intelligence group. (Dkt. No. 107-4.) Mr. Hoffman "conducted a random sampling" of the same data Sysco provided Plaintiff to select four dates from 2016, 2017, 2018, 2019—for a total of 12 dates—to

4

see if there were gaps of at least 10 minutes between scans on all the shifts on these 12 dates. (*Id.* at ¶¶ 3-5.) Plaintiff objects to Mr. Hoffman's declaration at these paragraphs as lacking foundation under Federal Rule of Evidence 701 and as improper expert opinion under Federal Rule of Evidence 702. Because Sysco has not offered Mr. Hoffman as an expert, his testimony falls under Rule 701 which states: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Mr. Hoffman's proposed testimony is not helpful to understanding his testimony or a fact in issue because Sysco has not provided a proper foundation from which the Court can determine Mr. Hoffman's methodology; that is, how he performed his statistical analysis to determine whether his sampling is an accurate representation of the data. Indeed, Plaintiff has submitted a supplemental declaration from his expert attesting that it is not accurate. (Dkt No. 108-3 at ¶¶ 7-8.) In addition, Mr. Hoffman's analysis appears to be based on technical and/or specialized knowledge regarding statistical sampling (or at least, it should be) which is outside the scope of Rule 701. Accordingly, Plaintiff's objection to the analysis set forth at Paragraphs 3-5 of Mr. Hoffman's opinion is sustained. The Court will not consider this evidence for purposes of deciding class certification.

**DISCUSSION**

Plaintiff seeks certification of a class of all non-exempt employees who are employed or have been employed by Sysco SF in the State of California at any time from October 18, 2012 to the present, and who worked as warehouse selectors and were not paid all lawful wages, including minimum and premium wages. He seeks certification of three subclasses as well as derivative subclasses:

(1) **a meal period subclass** defined as all non-exempt employees who are employed or have been employed by Sysco SF in the State of California at any time from October 18, 2012 to the present, who have worked as warehouse selectors and were not paid all lawful wages, including meal period wages;

5

(2) **a rest period subclass** defined as all non-exempt employees who are employed or have been employed by Sysco SF in the State of California at any time from October 18, 2012 to the present, who have worked as warehouse selectors and were not paid all lawful wages, including rest period wages; and

(3) and **an unpaid minimum wage subclass** defined as all non-exempt employees who are employed or have been employed by Sysco SF in the State of California at any time from October 18, 2012 to the present, who have worked as warehouse selectors and were not paid all minimum wages.

## I. Standing

As a threshold matter, the Court must determine whether Plaintiff has standing to represent each of these classes. "Standing is a necessary element of federal-court jurisdiction" and a "threshold question in every federal case." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Article III standing consists of three "irreducible constitutional minimum" requirements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016). The injury in fact "must be both concrete and particularized." *Id*. at 1548. To be "particularized," an injury "must affect the plaintiff in a personal and individual way," while "concreteness" requires an injury to be "'de facto'; that is, it must actually exist." *Id*. at 1548 (citation omitted). A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought. *Davis v. Federal Election Com'n*, 554 U.S. 724, 734 (2008); *see also Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 903 (9th Cir. 2018) (holding that a plaintiff's standing to pursue one claim is not determinative of the plaintiff's standing to pursue other claims).

There is no dispute that Plaintiff has standing to bring his meal and rest break claims as he attests that he worked through his meal and rest breaks and was not paid all the premium pay he was entitled to as result. (Dkt. No. 104-40 at ¶¶ 9-13.) With respect to the unpaid minimum wages or off-the-clock claims, Plaintiff makes two claims: 1) Sysco failed to pay Selectors who

performed work before clocking-in, and 2) Sysco failed to pay Selectors who performed work during their meal periods (while clocked-out). At oral argument, Sysco argued that Plaintiff did not perform work before clocking-in and thus he could not bring this claim or represent a class of individuals raising this claim. Because Sysco had not previously argued that Plaintiff was not adequate, typical, or lacked standing to represent such a class, the Court ordered the parties to submit supplemental briefing. (Dkt. No. 114.)

Having considered the parties' supplemental submissions, the Court finds that Plaintiff lacks standing to pursue a claim that Sysco failed to compensate Selectors who performed work before clocking-in given that he testified that he would clock-in before performing *any* work (Dkt. No. 107-1 at 34 (74:1-19)), and Plaintiff does not identify any evidence that suggests he was ever not compensated for work he performed before clocking-in. In other words, Plaintiff has not been injured by Sysco's alleged failure to compensate Selectors for work performed before they clocked in.

Since Plaintiff lacks standing to bring a claim that Sysco failed to compensate Selectors for work performed before they clocked-in, he may not seek relief on behalf of himself or any other member of the class. *NEI Contracting and Engineering, Inc. v. Hanson Aggregates Pacific Southwest, Inc.*, 926 F.3d 528, 532 (9th Cir. 2019). In *NEI Contracting*, for example, the district court certified a class based on the plaintiff's claim under the California Invasion of Privacy Act (CIPA). The court later held that the plaintiff lacked standing to bring the CIPA claim and decertified the class. The Ninth Circuit affirmed on the grounds that "given the class representative's lack of standing, the trial court did not abuse its discretion in decertifying the class." *Id.* at 533. The same result obtains here. The Court will not appoint Plaintiff to represent a class on a claim which he has no standing to bring.

Plaintiff attempts to distinguish *NEI Contracting* on the grounds that there the court had actually found that the plaintiff lacked standing. It is true that Sysco has not moved to dismiss or for summary judgment on the off-the-clock claim based on no standing to bring a claim for work performed before clocking-in, but the Court gave Plaintiff the opportunity to address Sysco's argument so that he could at least demonstrate how he would prove Plaintiff's standing to bring

7

such a claim. He has not and apparently cannot do so given his testimony and his employment records. The Court will not certify a claim for class action treatment knowing that it will later have to decertify the claim.

Plaintiff's proposed additional class representative Musava Wendell does not save the class certification motion on this claim. First, Plaintiff has not moved, and the Court has not allowed, amendment of the case to add Mr. Wendell as a plaintiff. Second, Mr. Wendell does not attest that he performed scanning work before he clocked-in because of the pressure of the productivity goals—Plaintiff's stated theory of the case; instead, his testimony appears to be that the 12 minutes Sysco allotted Selectors to get ready for their shifts was not sufficient for him, a very different theory. (Dkt. No. 104-39 at ¶ 5.)

As Plaintiff has not shown that he has standing to pursue a claim that Sysco failed to pay Selectors for work performed before they clocked-in, and he in fact testified that he did clock-in before he performed any work, the Court will not certify the proposed off-the-clock claim based on work performed before clocking-in for the beginning of a shift. *NEI Contracting,* 926 F.3d at 532.

## II. Class Certification

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1124 (9th Cir. 2017). To succeed on his motion for class certification, Plaintiff must satisfy the threshold requirements of Federal Rule of Civil Procedure 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 588 (9th Cir. 2012). The requirements must be met for each claim for which certification is sought. *See Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 588 (9th Cir. 2012).

Rule 23(a) provides that a case is appropriate for certification as a class action if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

8

Fed. R. Civ. P. 23(a). "[A] party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)," but "also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast v. Behrend*, 569 U.S. 27 (2013) (internal quotation marks, citations, and emphasis omitted).

Plaintiff contends that the putative class satisfies Rule 23(b)(3). Certification under Rule 23(b)(3) requires: (i) that the questions of law or fact common to class members predominate over any questions affecting only individual members; and (ii) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24). Accordingly, the Court will begin its analysis with Rule 23(b)(3).

### A.   23(b)(3) Predominance

To meet the predominance requirement of Rule 23(b)(3), "the common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc*., 741 F.3d 1061, 1068 (9th Cir. 2014), abrogated on other grounds, *Microsoft Corp. v. Baker*, 137 S.Ct. 1702 (2017)(internal quotation marks and alterations omitted). The predominance inquiry "presumes that there is commonality and entails a more rigorous analysis[.]" *Hanlon*, 150 F.3d at 1022.

"Considering whether 'questions of law or fact common to the class predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 809 (2011); *see also Berger*, 741 F.3d at 1068 (in determining the appropriateness of class certification, the court must analyze each claim separately). "[T]he Court identifies the substantive issues related to plaintiff's claims . . . then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried." *Gaudin v. Saxon Mortg. Servs., Inc*., 297 F.R.D. 417, 426 (N.D. Cal. Aug. 5, 2013) (citation omitted).

9

#### a) Rest and Meal Break Claims

Under California law, an employer must provide rest periods in accordance with applicable statutes, regulations, and wage orders of the Industrial Welfare Commission ("IWC"). Cal. Lab. Code § 226.7(b). "An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry. If it does not—if, for example, it adopts a uniform policy authorizing and permitting only one rest break for employees working a seven-hour shift when two are required—it has violated the wage order and is liable." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012). However, an employer is not required to make an employee take a rest break, it just must authorize the employee to do so. *Id*.

Similarly, employers must provide employees with a 30-minute unpaid meal period when they work more than five hours per day, unless the total number of hours worked is six hours or less. Cal. Lab. Code § 512(a). The first meal period must be provided "no later than the end of an employee's fifth hour of work." *Brinker*, 53 Cal. 4th at 1041. A second 30-minute meal period is required when an employee works more than ten hours per day, unless the total number of hours worked is twelve hours or less. *Id*. While employers must offer meal breaks, "the employer's duty to provide a meal break is discharged if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Id*. at 1040 (internal citation and quotation marks omitted).

Plaintiff does not contend that Sysco does not have a policy of providing rest and meal breaks; indeed, Sysco has a written meal and rest break policy. (Dkt. No. 107-1, Ex. 3 at § 4.05, ECF 87-88.) Employees are provided a 30-minute meal period after more than 5 hours work and a minimum of a 10-minute break for every 4 hours worked. (*Id*. at Ex. 3, ECF 87-88; Ex. 6, ECF 124.) Employees are not on-duty during their meal periods and thus must clock-in and clock-out. (*Id*. at Ex. 3, ECF 88.) Employees are notified of the timing of meal and rest breaks in numerous ways: through posted meal and break schedules, through a bell system and intercom announcements, and during start-up meetings which happen at least once a week. (Dkt. No. 107-1, Ex. 2, Pangelinan Depo. at 93:13-95:24 (ECF 51-53); Dkt. No. 107-2, Pangelinan Decl. at ¶ 8.)

United States District Court
Northern District of California

Plaintiff's meal and rest break violation theory is instead that Sysco's Productivity Plan discourages Selectors from taking their meal and rest breaks; that is, because Sysco requires 100 percent productivity and disciplines employees who consistently fall below that goal while rewarding employees who exceed the goal with incentive pay, Selectors at least partially work through their rest and meal breaks to ensure that they can meet the 100 percent goal or earn an incentive bonus. To prevail on this claim then, Plaintiff must prove that the reason any particular Selector did not take a full meal or rest break is the dissuasion of the Productivity Plan. Plaintiff has not demonstrated, however, how this significant question can be answered on a class-wide basis.

Plaintiff identifies statistical evidence based on the SWMS data showing that nearly 89 percent of shifts contain evidence of work scans that occurred during the scheduled rest break. (Dkt. No. 104-8 at 15:25.) Plaintiff's labor economist expert opines that Sysco's Productivity Plan disincentivizes employees from taking their full rest break. (Dkt. No. 104-21 at ¶ 10.) As for meal breaks, Plaintiff relies on statistical evidence showing that 80 percent of shifts show a meal break that is either short (less than 30 minutes), late (after the employee has worked more than 5 hours), or interrupted (shows no period of 30 minutes without work scans). (Dkt. No. 104-8 at 15:13-16.) Plaintiff also offers his own testimony as well as declarations from some putative class members who attest that they consistently worked through their rest and meal breaks to ensure that they did not fall behind on productivity levels or to receive incentive pay. This evidence, however, does not demonstrate—and cannot demonstrate—that all missed meal and rest breaks were due to the Productivity Plan.

Plaintiff's own testimony is illustrative. He attests that he feared that if he "took a rest break in the middle of completing an order, the scanner would record all idle time and my productivity rate would be negatively affected." (Dkt. No. 104-40 at ¶ 9.) But he offers no evidence that the fear was well-founded, and, indeed, the record shows that in calculating production goals Sysco took account of the full rest and meal break times. What he does not say is that he could not consistently meet the production goals without working through his rest and meal breaks, at least partially and some of the time. He also attests that toward the end of his less-

11

than a year employment with Sysco, he "knew the warehouse well enough to finish orders more quickly, and so I felt comfortable taking one break before lunch." (*Id*.) Does that mean that Selectors who had worked there for more than a year, but worked through at least part of a meal or rest break, did so for a reason other than the productivity goals? If Plaintiff knew the warehouse well enough after a few months, why wouldn't the longer-term Selectors be able to take breaks and still meet their productivity goals?

Further, at deposition, Plaintiff was asked if he wanted to earn incentive pay. He responded not necessarily because he "was already earning enough money from all of the overtime" he was working, but he did it because "what's the difference between that and just being there, standing, and doing nothing? It's better to work." (Dkt. No. 107-1 at 92:12-19.) Such testimony suggests that, at least at times, Plaintiff worked through his breaks because he did not want a break and not because the Productivity Plan incentivized him to work through the breaks to earn a bonus.

Plaintiff also offers no methodology for determining which Selectors missed a full meal or rest break because they were concerned that they could not meet productivity goals and which Selectors chose to work during breaks to earn extra pay. A policy that dissuades employees from taking a break due to concerns about not meeting goals and therefore being terminated might be determined to unlawfully deprive an employee of a break, while one that provides extra pay if an employee exceeds certain goals might not. Indeed, Sysco offers evidence that Selectors may sometimes choose not to take a full break because they want to increase their productivity so they can earn extra pay. (Dkt. No. 107-11 at ¶ 7.) But Plaintiff offers no methodology for determining which reason, even assuming those were the only two reasons, an employee did not take a full meal and rest break. *See Hamilton v. Wal-Mart Stores, Inc*., 2018 WL 4813082, at *7 (C.D. Cal. Aug. 21, 2018) (denying certification of meal break claim because "there are various reasons an employee may have not taken a second break. Determining whether a violation exists would require an individualized inquiry as to why each employee failed to take their second meal period.").

Courts routinely decline to certify meal and rest break classes because, as here,

12

individualized issues regarding why employees elect not to take a particular meal or rest break predominate. *See, e.g.*, *Taylor v. W. Marine Prod., Inc.,* No. C 13-04916 WHA, 2014 WL 4683926, at *11 (N.D. Cal. Sept. 19, 2014) (finding that "whether there was some reason other than coercion that caused the employee to miss a meal break"); *Wilson v. TE Connectivity Networks, Inc.*, No. 14-CV-04872-EDL, 2017 WL 1758048, at *7 (N.D. Cal. Feb. 9, 2017) (noting that "courts consistently [find that] individualized issues predominate in meal and rest break claims" and collecting cases); *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 640 (N.D. Cal. 2010) (finding that individualized inquiries would predominate where plaintiff alleged that notwithstanding a written policy encouraging meal and rest breaks, there was an unwritten policy of denying meal and rest breaks and noting that plaintiff's "argument confuses the question of the existence of common issues of law and fact, with the question of whether common questions predominate over individual questions.").

The two cases Plaintiff cites in which break claims were certified do not persuade the Court that certification is appropriate. In *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D.Cal.2010), the district court certified a class of drivers because the employer had a common unlawful policy of automatically deducting pay for meal breaks (regardless of whether the breaks were taken) and refusing to provide a second meal break. The drivers were also all subject to a common scheduling practice which made taking breaks difficult. *Id*. at 636–38. Here, in contrast, Selectors themselves clock-in and clock-out for their meal breaks and their breaks are put into their schedules. Thus, there are individual questions as to why a Selector chose to work during his scheduled meal break for which the Selector himself clocked-in and clocked-out. And in *Jaimez v. Daiohs USA, Inc.*, 181 Cal.App.4th 1286 (2010), the evidence established predominant common factual issues regarding the missed meal breaks due to the employer's practice of designating delivery schedules and routes that made it impossible for employees to both take their breaks and complete their deliveries on time. *Id*. at 1300–1301. Further, before 2006, the employer had a practice of deducting 30 minutes per shift for a meal break even if no break was taken; and after 2006, employees had to sign a manifest indicating they took a meal break in order to get paid, regardless of whether they actually took the break. (*Id*. at 1300–1301). The evidence here is

13

1 different.

2 Plaintiff's reliance on non-class action cases also does not satisfy his burden. *See Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949 (2005); *Godfrey v. Oakland Port Services, Corp.*, 230 Cal.App.4th 1267, 1285 (2014). If the question was whether there is a genuine dispute as to whether the Productivity Plan disincentivized some Selectors from taking their breaks the answer would be in the affirmative. But the Court is not deciding a motion for summary judgment on Plaintiff's individual claims; instead, the question is whether Plaintiff has met his burden to show that common issues predominate on the meal and rest break claims. He has not met that burden.

Plaintiff's insistence that the predominant common issue "is the legality of Defendants' Productively Plan and, in particular, whether the policy discourages" employees from taking their meal and rest breaks is not persuasive. Plaintiff does not have a claim that the Productivity Plan itself is unlawful; instead, his claim is that Sysco violated the law that requires them to offer compliant meal and rest breaks and, if offered, prohibits them from dissuading Selectors from taking the breaks. While the evidence shows that for 50% of shifts the Selectors did not take their full 30-minute meal break and instead performed at least some work during that period, and that for 86% of scheduled rest breaks the Selectors performed at least some work, Plaintiff has not identified any common method of proving *why* the Selector worked during the meal or rest period. Thus, Plaintiff has not satisfied the predominance factor for his meal and rest break claims.

### b) Off-the-Clock Claim

California employers must compensate employees for time worked and overtime. *See* Cal. Lab. Code §§ 510, 1194; Cal. Code Regs.. tit. 8, § 11050. Under California law, a plaintiff may establish liability for an off-the-clock claim by proving that (1) they performed work for which they did not receive compensation, and (2) the employer knew or should have known as much, but (3) the employer stood idly by. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). Common questions predominate on this claim.

On the first element, the common question is whether Sysco had a policy not to pay Selectors for work performed while they were clocked-out for an unpaid meal period. This question can be answered on a class-wide basis by reviewing the time clock data, selection or

14

scanning data, and payroll records to determine whether Selectors performed work while clocked-out on a meal break and, if so, whether they were paid for that work. *See Jimenez*, 765 F.3d at 1165. Indeed, Sysco does not dispute that it did not pay Selectors for work performed while clocked-out for meal period. Proving the second element can also be done on a class-wide basis. *Id*. at 1166. Selectors worked at the same warehouse under the supervision of managers and not out in the field. Further, there is evidence Sysco regularly reviewed the scanning data to determine employees' productivity percentages and the scanning data was reviewed on a weekly basis to set employee incentive bonuses. And, a statistical analysis of a sampling of such data indicates that 52 percent of shifts over six hours contained scanning data during scheduled meal periods, and that 332 of the 351 employees whose data was surveyed had scans during their meal periods. (Dkt. No. 118-3 at ¶ 5(d).) This evidence of actual knowledge is common to all Selectors. Third, whether Sysco stood idly by is also a common question. *Id*. As the *Jimenez* court noted, "these are precisely the kind of common questions that Rule 23(a)(2) and *Dukes* require." *Id*.

Sysco's insistence that individual questions predominate is not persuasive. While the Court agrees that the question of whether a Selector worked during the meal period because of the Productivity Plan is an individual question (hence defeating certification of the break claims), such a question does not have to be answered to prove liability on the off-the-clock claim. The first element is *whether* the employees performed work for which they did not receive compensation, not *why* they did so. *Jimenez*, 765 F.3d at 1165. And all of the rules and procedures that Sysco adopted to ensure that Selectors take their meal breaks (Dkt. No. 119 at 5), are rules and procedures that applied to all Selectors—they do not create individual questions as to whether Sysco "stood idly by." The availability of timekeeping exception forms is evidence that Sysco can offer to prove that it was not aware that Selectors were working during their unpaid meal periods, or that they did not stand "idly by," but they do not create individual questions. Finally, the cases cited by Sysco are inapposite as they address claims for missed meal breaks, not an off-the-clock claim based on working during an unpaid meal break. *See, e.g.*, *Hamilton v. Wal-Mart Stores, Inc.*, No. EDCV1701415ABKKX, 2018 WL 4813082, at *6 (C.D. Cal. Aug. 21, 2018) (granting class certification on a missed meal period claim); *Cleveland v. Groceryworks.com, LLC*, 200 F.

1 Supp. 3d 924, 946 (N.D. Cal. 2016) (considering whether to grant summary judgment on a missed meal break claim); *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1023 (E.D. Cal. 2015) (same).

Accordingly, common issues predominate Plaintiff's off-the-clock claim based on work performed during meal breaks.

### B. The Remaining Class Certification Factors

Before certifying the off-the-clock claim arising from work performed during unpaid meal periods, the Court must determine whether Plaintiff has satisfied the other Rule 23 factors.

#### 1. Rule 23(a)

The Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(A).

Numerosity is satisfied for the off-the-clock work during meal periods claim. (Dkt. No. 118-3 at ¶ 5(d).) Commonality is met for the same reasons that individualized issues do not predominate determination of that claim.

Plaintiff's off-the-clock claim is also typical of the claims of the class he seeks to represent as it arises out of Sysco's practice of not paying Selectors for work performed during their unpaid meal breaks. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.") (internal quotation marks and citation omitted). Sysco's argument that Plaintiff's claim is not typical of those of employees who work the day shift is unpersuasive as Sysco has not argued that its policy of not paying for work performed while an employee is clocked-out for a meal break was different for day shift employees.

Finally, Plaintiff is also an adequate representative on this claim. Sysco contends that

16

Plaintiff is not adequate because his interests are not in line with those of the class since he was terminated after he refused to show up to work following a suspension for fighting such that he has something against Sysco. A plaintiff may be inadequate to serve as a class representative when there is "evidence of vindictiveness to such an extent that he cannot adequately represent the class." *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1464 (9th Cir. 1995). That a former co-worker attests that Plaintiff "just has something against Sysco after this fight" (Dkt. No. 107-10 at ¶ 4), fails to demonstrate that Plaintiff possesses an "animus that would preclude the possibility of a suitable settlement" such that he is not a proper class representative. *Kayes*, 51 F.3d at 1464. Accordingly, Plaintiff is an adequate class representative. Sysco does not challenge the adequacy of class counsel. Given counsels' considerable experience in wage and hour class actions (*see* Dkt. No. 104-1 at ¶ 5), the Court concludes that the adequacy of representation requirement is likewise satisfied with respect to class counsel.

### 2. Superiority

A class action is a superior means of adjudicating a dispute "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In evaluating superiority, "courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007), modified, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007), aff'd sub nom., *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009). A class action is superior to individual litigation on the off-the-clock claim for several reasons.

First, there is no indication that members of the proposed class have a strong interest in individual litigation or an incentive to pursue their claims individually. Second, Sysco has not identified any concerns over manageability of the class action that would weigh in favor of individual litigation given that Sysco's liability to "class members depends on common proof.. *See Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 936 (N.D. Cal. 2017) (recognizing as legitimate the defendant's "apprehension regarding manageability," but finding it "insufficient to

17

tip the scales away from the superiority of proceeding as a class when [the defendant's] liability to over 100 class members depends on common proof"). Finally, class actions are preferred in wage-and-hour actions when individual employees may forgo pursuing their claims due to fear of retaliation. *See Williams v. Superior Court*, 3 Cal. 5th 531, 558 (2017) (noting that fear of retaliation cuts in favor of "facilitating collective action so that individual employees need not run the risk of individual suits"); *see also Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 745 (2004), as modified on denial of reh'g (Mar. 9, 2004) ("for current employees, a lawsuit means challenging an employer in a context that may be perceived as jeopardizing job security and prospects for promotion.").

\*\*\*

Accordingly, the Court grants Plaintiff's motion for Rule 23(b)(3) certification of his off-the-clock work during unpaid meal breaks claim.

### C. Derivative Claims

Plaintiff also seeks certification of his derivative claims under Labor Code Sections 203 and 226 for the failure to pay wages at the end of employment and failure to provide accurate paystubs, respectively. Sysco argue that as derivative claims, these claims rise and fall with the rest break, meal break, and off-the-clock claims. Because the Court has found that certification is appropriate as to the off-the-clock work during unpaid meal periods claim, certification is appropriate for these claims as derivative of that narrowed off-the-clock claim. Sysco's only argument against certification of these claims is a merits-based argument that these claims fail as a matter of law, but these questions are appropriate for summary judgment not class certification.

### D. Sysco's Fail-Safe Subclass Argument Fails

Finally, Sysco insists that Plaintiff's proposed subclasses are "fail-safe" subclasses because no employee can be a member of a subclass unless liability is established such that the subclasses are unascertainable and unmanageable. "The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). The Ninth Circuit, however, has recently suggested that class definitions

which reference the merits do not in fact present ascertainability issues. *See Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017) (noting that "our circuit's caselaw appears to disapprove of the premise that a class can be fail-safe" and citing *Vizcaino v. United States District Court*, 173 F.3d 713, 721–22 (9th Cir. 1999) (rejecting a claim that a class definition defining the plaintiffs as common law employees assumed their contested legal status and was therefore "circular")). Accordingly, the Court is not persuaded that Plaintiff's off-the-clock and derivative class definitions create impermissible fail-safe subclasses.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for class certification is GRANTED IN PART and DENIED IN PART. The class certification motion is granted as to Plaintiff's off-the-clock claim for work performed during unpaid meal periods and the related derivative claims, in all other respects it is denied. Henry Hernandez is appointed as Class Representative and Mallison & Martinez is appointed Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

The parties shall appear for a further case management conference on February 20, 2020 at 1:30 p.m. in Courtroom E. A joint case management conference statement is due one week in advance. The parties' joint statement shall include (1) proposed class definitions in accordance with the Court's Order, and (2) proposals as to how to proceed to final resolution, including class notice, further ADR, and dispositive motions. Lead counsel shall appear at the case management conference.

**IT IS SO ORDERED.**

Dated: February 3, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge